# In the United States Court of Federal Claims

No. 13-353 T

(Filed February 4, 2016)

| | |
|---|---|
| * * * * * * * * * * * * *  * | Gasoline and Diesel Fuel Excise |
| J.J. POWELL, INC.,  * | Taxes;  26 U.S.C. §§ 6416, |
|  * | 6427, 6675 (2012); Treas. Reg. |
| *Plaintiff*,  * | §§ 48.6416(b)(2)-3 (1985), |
|  * | 48.6427-9 (as amended in |
| v.  * | 2000); Failure to Keep Tax |
|  * | Exemption Certificates as |
| THE UNITED STATES,  * | Required by Statute and |
|  * | Regulation; No Penalties |
| *Defendant*.  * | Because Reasonable Cause for |
|  * | Failure Exists. |
| * * * * * * * * * * * * *  * | |

*Cloyd F. Van Hook*, New Orleans, LA, for plaintiff.

*Jennifer Dover Spriggs*, United States Department of Justice Tax Division, with whom were *Caroline D. Ciraolo*, Acting Assistant Attorney General, *David I. Pincus*, Chief, Court of Federal Claims Section, *G. Robson Stewart*, Assistant Chief, Washington, DC, for defendant.

---

## OPINION AND ORDER

---

**Bush**, *Senior Judge*.

This case is before the court on cross-motions for summary judgment filed under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). The parties request judgment on plaintiff's excise tax refund claims and the government's counterclaims regarding essentially the same tax issues.  For the

reasons stated below, plaintiff's motion for summary judgment is granted in part and denied in part, and defendant's cross-motion for summary judgment is granted in part and denied in part.

## BACKGROUND[1]

A fuel seller such as J.J. Powell, Inc. (Powell) purchases fuel and pays federal excise taxes on the fuel purchased. Am. Compl. ¶ 6. In the case of most of Powell's customers, the excise tax is passed on to the customer in the price paid for Powell's fuel. Pl.'s Mot. at 2. However, in the case of tax-exempt customers, *i.e.*, entities that are exempt from federal excise taxes on fuel, Powell sells its fuel at a tax-excluded price. *Id.* These fuel sales to "exempt" customers occur either through truck delivery or at unstaffed fueling islands. Robert Keith Powell Deposition Transcript (K. Powell Deposition) at 11. The fueling islands, referred to as cardlock locations, are operated by the customer using a "fueling network card" and a Personal Identification Number (PIN). *Id.* at 36; Def.'s App. at 206. For fuel sales to exempt customers delivered either by truck or by cardlock location, Powell uses invoices to collect payment for the fuel (but these payments do not include the excise tax component of the price Powell paid to obtain the fuel). K. Powell Deposition at 14, 21, 41.

The Internal Revenue Code (IRC or Code) allows Powell, if certain conditions are met, to recover the excise taxes it paid for the fuel it sells to exempt customers at a tax-excluded price. To do so, a fuel seller such as Powell applies to be a registered "Ultimate Vendor" by filling out Internal Revenue Service (IRS) Form 637. Powell completed this process in 1994 and became an Ultimate Vendor on December 7, 1994. Def.'s App. Ex. 20. The court notes that Form 637 has undergone many changes since Powell first applied to be an Ultimate Vendor – revisions to Form 637 were made in January 1994, October 1996, October 1998, March 2005, December 2005, October 2006, January 2009, and August 2012 to reflect changes in Ultimate Vendor procedures. In 1994, when Powell achieved Ultimate Vendor status, that status only encompassed diesel sales. *See* IRS Form 637 (Jan. 1994). Indeed, the Ultimate Vendor "Letter of Registration" received by Powell only refers to diesel fuel sales: "This allows your company to claim a credit or refund of the Federal Excise Tax on your sale of 'undyed' diesel fuel for

---

[1] The facts of this case are undisputed unless otherwise noted.

use on a farm for farming purposes and/or for exclusive use by a state or local government." Def.'s App. Ex. 20.  Over the years, however, Ultimate Vendor status has permitted Powell and other fuel sellers to obtain refunds not just on diesel sales but also on gasoline sales.  *See* IRS Form 637 (Aug. 2012) (describing Ultimate Vendors as companies that sell "(a) undyed diesel fuel or undyed kerosene to a state or local government for its exclusive use, or (b) gasoline (including aviation gasoline) to a state or local government for its exclusive use or to a nonprofit educational organization for its exclusive use").  Because of the many changes to Ultimate Vendor status between 1994 and the tax quarters at issue in this suit, the court finds the specific terms and conditions of Powell's December 7, 1994 "Letter of [Ultimate Vendor] Registration" to be largely irrelevant to this case because they are obsolete.

Fuel sellers such as Powell obtain refunds of federal excise tax on fuels sold to exempt customers by submitting IRS Form 8849 quarterly.  Powell submitted separate forms for gasoline and diesel claims for the tax quarters at issue in this suit.  Def.'s App. Exs. 7-18.  Most of Powell's exempt customers appear to be local governments in central Pennsylvania or divisions thereof.  *Id.*  At issue here are the refunds Powell obtained for federal excise taxes for fuel sales occurring in the third and fourth quarters of 2009 and all four quarters of 2010.  These refund claims were all submitted on Form 8849 on the following dates:  December 3, 2009, February 19, 2010, May 20, 2010, July 29, 2010, November 30, 2010, and January 28, 2011.  The court's primary inquiry, therefore, is whether during this period from December 3, 2009 through January 28, 2011 Powell was entitled to the refunds it received under the statutes and regulations in effect at that time.[2]

Plaintiff asserts, and the government does not refute, that the IRS audited Powell in prior years and found Powell eligible for the refund claims it submitted on Form 8849 because those refunds were adequately supported by Powell's customary record-keeping practices.  *See* K. Powell Deposition at 48, 87-88.  In

---

[2]/  The government appears to focus on regulations in effect in 2012 and 2013, rather than those in effect in 2009-2011.  Def.'s Reply at 4.  There is little need to resolve any disparity between the government's date references and this court's focus on 2009 through 2011, because the court is not aware of any relevant changes in the regulations between 2009 and 2016.  To the extent, however, that the state of the law might have evolved during this period, the court believes that the correct focus is on the time-span when Powell filed its claims for refund on Form 8849.

July 2011, however, an IRS auditor found fault with the records kept by Powell with regard to the certificates received from Powell's tax-exempt customers.  Pl.'s Mot. Ex. 1, at 4.  Simply put, each of these exemption certificates provides documentation that Powell's exempt customer is exempt from federal excise taxes on fuel and that the fuel purchased from Powell will be used exclusively by the exempt customer, under penalty of law.  Def.'s App. Ex. 22.  Upon examination of Powell's files, the auditor found that

> the required 637 [Ultimate Vendor] exempt [customer] certificates are not being maintained in a satisfactory manner.  Fuel is being sold to local governments tax free without proper certificates on file.

Pl.'s Mot. Ex. 1, at 4.  Because the court's review of the claims and counterclaims in this suit is *de novo*, the court need not discuss the auditor's findings in any detail.  *See, e.g.*, *Stobie Creek Invs., LLC v. United States*, 82 Fed. Cl. 636, 663 (2008) (*Stobie Creek I*) ("The court tries factual issues *de novo* in tax refund suits; no weight is given to the factual findings made by the IRS during administrative proceedings." (citing *George E. Warren Corp. v. United States*, 141 F. Supp. 935, 940 (Ct. Cl. 1956); *Litman v. United States*, 78 Fed. Cl. 90, 107 (2007))), *aff'd*, 608 F.3d 1366 (Fed. Cir. 2010).  It is important to note, however, that the IRS auditor in 2011 appears to have had a less than firm grasp of the regulations that governed Powell's record-keeping practices and refund claims.  *See* Pl.'s Mot. Ex. 1, at 7-8, 10 (setting forth the auditor's reliance on regulations which not only expired in 1993, and thus were not in effect during the relevant period, but whose terms also contradicted his views as to what would constitute satisfactory exemption certificates).

The 2011 audit resulted in negotiations between Powell and the IRS which were unsuccessful.  In plaintiff's view, the IRS offered to accept approximately $84,000 instead of a potential assessment of approximately $243,000.  Am. Compl. ¶ 13.  This lawsuit ensued, where plaintiff's excise tax refunds for the six quarters in 2009-2010 provide the foundation for both plaintiff's refund claims and the government's counterclaims.  The government's counterclaims in this suit seek approximately $99,000, as a base figure, as well as unspecified additional interest and accrual of penalties.  Am. Answer ¶ 38.  The parties' cross-motions on these claims have been fully briefed; oral argument was neither requested by the

parties nor required by the court.

## DISCUSSION

## I.    Standard of Review

"[S]ummary judgment is a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987) (internal quotations and citations omitted). The party moving for summary judgment will prevail "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). Cross-motions for summary judgment "are not an admission that no material facts remain at issue." *Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1573 (Fed. Cir. 1997) (citing *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)). The parties may focus on different legal principles and allege as undisputed a different set of facts. *Id.* "Each party carries the burden on its own motion to show entitlement to judgment as a matter of law after demonstrating the absence of any genuine disputes over material facts." *Id.*

A genuine issue of material fact is one that could "affect the outcome" of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party . . . need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case." *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). A summary judgment motion is properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial. *Celotex*, 477 U.S. at 324.

The United States Supreme Court has instructed that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at

249 (citation omitted). "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." *Dairyland*, 16 F.3d at 1202 (citing *Celotex*, 477 U.S. at 323).

In refund suits, the plaintiff bears the burden of proof as to its entitlement to a tax refund. *See, e.g.*, *Abrahamsen v. United States*, 228 F.3d 1360, 1364 (Fed. Cir. 2000) ("In a tax refund case, the taxpayer bears the burden of establishing the right to a refund." (citing *Snap On Tools, Inc. v. United States*, 26 Cl. Ct. 1045, 1055 (1992))); *Young & Rubicam, Inc. v. United States*, 410 F.2d 1233, 1238 (Ct. Cl. 1969) ("In refund litigation, the taxpayer has the burden of proof because he is the plaintiff and because the government benefits from the presumptive correctness of the Commissioner's administrative determination.") (citations omitted). The plaintiff also bears the burden of proof as to the amount of any refund owed by the government. *E.g.*, *Thomas v. United States*, 56 Fed. Cl. 112, 116-17 (2003) (citations omitted). Similarly, the taxpayer plaintiff ultimately bears the burden of persuasion regarding the government's counterclaim for unpaid taxes and penalties. *See, e.g.*, *Bolding v. United States*, 565 F.2d 663, 672 (Ct. Cl. 1977) ("The burden of proof on . . . the Government's counterclaims for the unpaid balance of the assessments[] was upon plaintiffs, requiring them to show that the Commissioner's determinations were erroneous.") (citations omitted); *W. Mgmt., Inc. v. United States*, 45 Fed. Cl. 543, 549 (2000) ("It is well established that a tax assessment is presumptively correct and that the taxpayer bears the burden of persuasion that the Commissioner's assessment is erroneous.") (citations omitted).

## II.    Analysis

### A.    Two Statutory Schemes

Although Ultimate Vendor fuel sellers like Powell sell both gasoline and diesel to exempt entities, the statutory framework governing those sales in 2009 and 2010 is generally split into provisions addressing diesel excise taxes and

others addressing gasoline excise taxes.[3]  Apart from instances in which a "Credit Card Issuer" is involved in fuel sales to exempt customers, a topic which the court reserves for the second section of its analysis, there is no real dispute as to the statutes and regulations which govern here.  The court begins with diesel sales to exempt customers.

### 1.    Refund of Federal Excise Taxes on Diesel Sales to Exempt Customers

In relevant part, the statute governing excise tax refunds for diesel states:

> [I]f any diesel fuel or kerosene on which [excise] tax has been imposed by [IRC] section 4041 or 4081 is used by any person in a nontaxable use, the Secretary shall pay (without interest) to the ultimate purchaser of such fuel an amount equal to the aggregate amount of tax imposed on such fuel under [IRC] section 4041 or 4081, as the case may be . . . .

26 U.S.C. § 6427(l)(1) (2012).  An Ultimate Vendor may obtain such a refund when it has not passed the excise tax on to the exempt customer if certain conditions are met under IRC § 6427(l)(5), titled "Registered vendors to administer claims for refund of diesel fuel or kerosene sold to State or local governments."  As plaintiff notes, Pl.'s Mot. at 9-10, relevant conditions under the statute require that Powell become a registered Ultimate Vendor and that Powell not collect diesel excise taxes from its exempt customers.[4]  IRC § 6427(l)(5)(C).  Unfortunately for plaintiff, the IRC also requires that the Ultimate Vendor "establish[] under the regulations prescribed by the Secretary" that the diesel

---

[3]/  The court has pared down the parties' extensive discussion of relevant statutes to those most pertinent to the resolution of the parties' cross-motions.

[4]/  The IRC establishes an Ultimate Vendor's authority to file refund claims for diesel sales to local governments.  IRC § 6427(l)(5).  Although, according to plaintiff, nonprofit educational institutions are also exempt from excise taxes on diesel, *see* Pl.'s Mot. at 8, an Ultimate Vendor is not authorized by IRC § 6427(l)(5)(C) to obtain refunds for diesel sales to those entities.  The government has not argued here that Powell's exempt diesel customers were outside the category of local government entities referenced in IRC § 6427(l)(5)(C).

excise taxes were not passed on to the Ultimate Vendor's exempt customers in order to qualify for such refunds.  26 U.S.C. § 6416(a)(1) (2012).

The government argues, Def.'s Mot. at 14-15, and the court cannot disagree, that Treas. Reg. § 48.6427-9 (as amended in 2000), is applicable to Powell and requires that Powell maintain a specific set of records to establish that Powell is entitled to a refund of diesel excise taxes.  Allowance of the claim requires that Powell "has filed a timely claim . . . that contains the information required under paragraph (e) of this section."  Treas. Reg. § 48.6427-9(c)(4).  The claim must include the statement that "the claimant has in its possession an unexpired certificate described in paragraph (e)(2) of this section and the claimant has no reason to believe any information in the certificate is false."  *Id.* § 48.6427-9(e)(1)(vi).  Finally, and most importantly, the regulation sets forth the required content for unexpired certificates establishing the exempt nature of the Ultimate Vendor's diesel sales, and includes a model certificate for guidance.  *Id.* § 48.6427-9(e)(2).

Powell's exemption certificates, obtained from its exempt customers and reviewed by the IRS auditor, were substantively deficient pursuant to the requirements of this regulation.  Whereas the regulation, Treas. Reg. § 48.6427-9(e)(2)(ii),  requires exemption certificates of no more than twelve months duration, the great majority of Powell's certificates (which were approximately ninety-four in number) were of three years duration.  Def.'s App. Ex. 22.  Only three of Powell's certificates were of twelve months duration, Def.'s App. at 139, 152, 194, but these expired at the end of 2009 and would not have supported Powell's refund claims for sales made during 2010, four of the six tax quarters at issue in this suit.  The court must agree with defendant that Powell's claims for refunds of excise tax on diesel sold to its exempt customers during the relevant period were appropriately disallowed pursuant to Treas. Reg. § 48.6427-9(c), (e).

Aside from their duration, however, Powell's certificates, with minor exceptions, appear to the court to be satisfactory pursuant to the regulation.  The form used by Powell, if properly completed, substantially complied with the representations required by Treas. Reg. § 48.6427-9(c), (e).  The court cannot consider that a rational IRS audit of such certificates, if these had been issued for one year and had been updated promptly upon expiration, would have denied

8

Powell the refund claims which it submitted to the IRS.[5]

The government in this suit does not argue, for example, that any of Powell's exempt customers were not truly exempt from fuel excise taxes, or that Powell requested larger refund amounts than were commensurate with the excise taxes that Powell did not pass on to such customers. *See* Def.'s Reply at 3 ("The defendant does not dispute that plaintiff maintained certificates for entities that were tax exempt."). Instead, the sole rationale for the government's position is that Powell failed to adequately maintain certificates required by the regulation:

> The dispute in this action is whether plaintiff, in maintaining those certificates, complied with the statutes and regulations that govern its entitlement to the refunds claimed. The evidence shows that plaintiff did not comply with the applicable statutes and regulations and its claims must fail.

*Id.* The irregular nature of Powell's diesel excise tax refund claims is largely the fault of Powell's administrative error in allowing exempt customers to renew their exemption certificates once every three years, rather than requiring an annual renewal.

The court has considered plaintiff's argument that the regulation in question merely requires a good faith representation that proper exemption certificates are on file. Pl.'s Mot. at 13. The court cannot excuse plaintiff's failure to procure and maintain proper and unexpired exemption certificates on such an untenable

---

[5]/ Although the government argues that the regulation requires Powell's exemption certificates to "identify the type of fuel purchased," Def.'s Mot. at 15, the model certificate does not contain an explicit demand that the exempt entity identify the type of fuel to be purchased from the Ultimate Vendor. Instead, the model certificate contains a representation that the exemption certificate will concern the purchase of diesel fuel or kerosene. Treas. Reg. § 48.6427-9(e)(2)(ii). According to the regulation, Powell's exempt customers need not use an exact duplicate of the model certificate, they need only complete a certificate that "is in substantially the same form as the model certificate provided in paragraph (e)(2)(ii) of this section, and contains all information necessary to complete such model certificate." *Id.* § 48.6427-9(e)(2)(i). Except for duration, Powell's certificates substantially complied with this regulation.

reading of Treas. Reg. § 48.6427-9(c), (e).  The regulation's requirements for exemption certificates would have no force if a fuel seller could ignore them entirely in its record-keeping practices.  Although it appears that employees at Powell possessed a good faith belief that three-year exemption certificates were satisfactory to support Powell's diesel excise tax refund claims, the regulation clearly requires that exemption certificates be updated every twelve months and that these certificates be of no more than twelve months duration.  Powell's exemption certificates did not satisfy Treas. Reg. § 48.6427-9(c), (e).

Thus, for diesel excise taxes, plaintiff's refund claims must fail, at least as to the base amount of payments received on the claims submitted on Form 8849 and applicable interest.  The disallowance of Powell's diesel excise tax refund claims comports with the IRC and the relevant regulation.[6]  Plaintiff's motion for summary judgment is denied as to refunds of diesel excise taxes, and defendant's motion for summary judgment is granted as to these refunds of diesel excise taxes.  The court now turns to Powell's refund claims for gasoline excise taxes.

### 2.    Refund of Federal Excise Taxes on Gasoline Sales to Exempt Customers

The government is on unstable regulatory footing when it seeks to invalidate Powell's refund claims for excise taxes on gasoline sold to exempt customers.  The most pertinent statutory provisions related to the refund claims for gasoline excise taxes filed by Powell are found in IRC § 6416.  As is the case for diesel, an Ultimate Vendor may file refund claims for sales to exempt gasoline customers.  IRC § 6416(a)(4), (b)(2)(C)-(D).  Also, as discussed *supra*, to recover on its claims the Ultimate Vendor must establish that under regulations prescribed by the Secretary its gasoline excise tax refund claims are founded on sales to exempt customers.  IRC § 6416(a)(1).

There is *no* regulation prescribed by the Secretary, however, which requires that exemption certificates on file with an Ultimate Vendor, for purposes of refunds of gasoline excise taxes, be limited to twelve months in duration.  Although the government points to Treas. Reg. § 48.6416(b)(2)-3(b)(1)(ii) (1985),

---

[6]/ Plaintiff notes that Powell quickly corrected the record-keeping problem in response to the 2011 audit.  Pl.'s Mot. at 14; K. Powell Deposition at 86.

Def.'s Mot. at 5, 13, this regulation presents neither a model certificate nor any specific requirements for the duration of exemption certificates. Thus, there is no regulation prescribed by the Secretary which, pursuant to the terms of IRC § 6416(a)(1), could serve to invalidate Powell's exemption certificates supporting its claims for the refund of gasoline excise taxes for the relevant six quarters in 2009-2010.

The government attempts, nonetheless, to invalidate Powell's certificates by asserting that overall they lack the specific information required by Treas. Reg. § 48.6416(b)(2)-3(b)(1)(ii). *See* Def.'s Mot. at 13. The court disagrees. There is no substantive information generally missing from the certificates in Powell's files that would prevent the IRS from ascertaining the nature of the article purchased ("taxable fuel"), the amount of fuel purchased ("All orders placed by the Purchaser" during the specified period of time), the exempt nature of the use of the fuel ("Name of governmental unit"), and the address of the exempt consumer of the fuel (Address of governmental unit") in order to establish the validity of the gasoline excise tax refund claims submitted by Powell. *See* Def.'s Mot. Ex. 22; *see also* Treas. Reg. § 48.6416(b)(2)-3(b)(1)(ii)(A). Each of Powell's exemption certificates also contains a statement that the information on the certificate is correct, subject to penalty of law, as required by this regulation. Treas. Reg. § 48.6416(b)(2)-3(b)(1)(ii)(C). Finally, although the government insists that the dates on these exemption certificates are invalid because they were not signed on the effective start date of the certificates, the court cannot find any regulatory provision that is violated by this practice. In sum, the court finds that Powell's certificates substantially complied with both IRC § 6416(a)(1) and Treas. Reg. § 48.6416(b)(2)-3(b)(1)(ii) so as to properly establish plaintiff's refund claims for gasoline excise taxes in this suit.[7]

Finally, the government relies on the terms of Powell's Letter of Registration conferring Ultimate Vendor status on Powell in 1994, Def.'s App. Ex. 20, as well as various IRS publications, Def.'s Reply at 5 & nn.2-4, to support its argument that Powell's exemption certificates could only be valid if issued for

---

[7]/ Indeed, aside from the duration issue, Powell's certificates applicable to gasoline sales report the same types of information that are requested in the model certificates provided to Ultimate Vendors in various publications such as IRS Publication 510 (revised April 2009) (Model Certificate M), as well as the information required by the diesel excise tax refund regulation, Treas. Reg. § 48.6427-9(e)(2)(ii).

twelve months or less.  As the court has previously noted, Powell's Ultimate Vendor letter issued in 1994 only concerned diesel, not gasoline, and its terms had long since been superseded by changes to Ultimate Vendor status in general. Powell cannot be held to the terms of a letter that could not conceivably apply to gasoline excise taxes in 2009-2010.  As for the IRS publications referenced by the government, such as IRS Publication 510, the court notes that such informational publications are not authoritative sources of tax law.  *See, e.g.*, *Stobie Creek I*, 82 Fed. Cl. at 671 ("IRS notices are press releases stating the IRS's position on a particular issue and informing the public of its intentions; such notices do not constitute legal authority." (citing *Samonds v. Comm'r*, 66 T.C.M. (CCH) 235 (1993))); *Miller v. Comm'r*, 114 T.C. 184, 195 (2000) ("Administrative guidance contained in IRS publications is not binding on the Government, nor can it change the plain meaning of tax statutes.") (citations omitted); *Fudim v. Comm'r*, 67 T.C.M. (CCH) 3011, 1994 WL 223280, at *7 n.13 (1994) (noting that IRS informational publications do not have legal authority).  Thus, for example, even though IRS Publication 510 (revised 2009) included a model exemption certificate (Model Certificate M) which could only be valid for twelve months, this model certificate and Publication 510, by themselves, have no legal force and cannot invalidate Powell's refund claims for gasoline excise taxes.

For all of these reasons, Powell's refund claims, as these claims pertain to gasoline excise taxes, prevail over the government's challenges.  Plaintiff's motion for summary judgment is thus granted in part, as to gasoline excise tax refund claims, and defendant's motion for summary judgment on its counterclaims is denied in part in this regard.  The court now turns to the "Credit Card Issuer" argument raised by defendant before addressing the penalties the government seeks to impose on Powell's disallowed diesel excise tax refund claims.

## B.    Credit Card Issuer Dispute

### 1.    Overview

During the course of this litigation, defendant's examination of Powell's fuel sales practices produced a new argument seeking to invalidate Powell's refund claims filed in 2009-2011.  As explained further below, the government contends that any fuel sale by Powell to an exempt customer which involved a credit card would require that Powell comply with statutory provisions regarding

registered "Credit Card Issuers" in order to obtain a refund of excise taxes for these particular sales. Because the record shows that Powell did not register as a Credit Card Issuer, and that Powell did not comply with Credit Card Issuer provisions in the Code, the government contends that some of Powell's excise tax refund claims are invalid for this additional reason. The court is not convinced, however, that the facts of this case implicate the statutory provisions cited by the government, especially as those provisions were interpreted in 2009-2011.

As a threshold matter, the court notes that Powell's fuel sales practices were examined in detail in 2011 by the IRS auditor. Pl.'s Mot. Ex. 1. The auditor noted that some of Powell's fuel sales were by "purchase[] card." *Id.* at 4. The auditor also noted that the proper form to accompany Powell's refund claims on Form 8849 was Schedule 2, which is titled "Sales by Registered Ultimate Vendors." *Id.* at 9; Def.'s Mot. Exs. 7-18. There is no mention that Powell should have attached Schedule 8, which is titled "Registered Credit Card Issuers," to its refund claims on Form 8849. Pl.'s Reply Ex. 4. Thus, in the court's view, there is no indication on this record that the IRS considered Powell to be a registered Credit Card Issuer at this time or considered that any of Powell's fuel sales to exempt customers required Credit Card Issuer registration. Although the IRS auditor's review in 2011 is not dispositive of the validity of Powell's 2009-2011 refund claims, it provides some evidence of the IRS's interpretation of Credit Card Issuer requirements at that time.

## 2.     Changes to the Code to Address Credit Card Issuers

Early in 2005, the IRS attempted to explain the consequences of the use of "oil company credit cards" by exempt customers in the context of refund claims for gasoline excise taxes filed by Ultimate Vendors. *See* I.R.S. Notice 2005-4, 2005-1 C.B. 289 (2005), § 7(a)(1)(ii) (Fuel Tax Guidance; Request for Public Comments). In short, the IRS noted that there could be some confusion as to recent changes in the law and suggested that further legislation would "design[] an administrable alternative." *Id.* Later in 2005, Congress passed the Safe, Accountable, Flexible, Efficient, Transportation Equity Act of 2005, Pub. L. No. 109-59, § 11163, 119 Stat. 1144, 1973-75 (2005) ("SAFETEA"). In relevant part, SAFETEA addressed refunds of excise tax on exempt sales of fuel by credit card and amended Code sections 4101, 6416, and 6427. The parties hotly dispute how the Credit Card Issuer provisions of SAFETEA might apply to an Ultimate Vendor

such as Powell.  The court begins, as it must, with the statutory text.

The most relevant portion of the statutory provisions enacted by SAFETEA, at least for this dispute, is IRC § 6416(a)(4)(B)(iii)(I)-(III).  For a Credit Card Issuer to obtain a refund of either gasoline or diesel excise taxes, it must

> (I) . . . repa[y] or agree[] to repay the amount of the tax to the ultimate vendor,
> (II) . . . obtain[] the written consent of the ultimate vendor to the allowance of the credit or refund, or
> (III) . . . otherwise ma[k]e arrangements which directly or indirectly provide[] the ultimate vendor with reimbursement of such tax.

*Id.*  The statutory text indicates, therefore, that a Credit Card Issuer is an entity different from an Ultimate Vendor, because the only mention of an Ultimate Vendor in this passage is the description of a Credit Card Issuer's responsibility to obtain an agreement, written consent or arrangement from the Ultimate Vendor. The statute therefore provides no foundation to view an Ultimate Vendor as synonymous with a Credit Card Issuer, but instead points to a contrary conclusion. Accordingly, the most straightforward reading of this statutory text is that an Ultimate Vendor that issues a fueling card, rather than a general purpose credit card, to its exempt customers is not a "Credit Card Issuer" under the terms of the Code.[8]

### 3.    No Regulatory Implementation of Credit Card Issuer Rules

The government concedes that no Treasury Regulations address the proper interpretation of the Credit Card Issuer statutory provisions enacted by SAFETEA.

---

[8]/ The legislative history cited by the parties is generally supportive of the court's view that SAFETEA distinguished Credit Card Issuers and credit cards from Ultimate Vendors and fueling cards.  *See* Staff of Jt. Comm. on Taxation, 109th Cong., General Explanation of Tax Legislation Enacted in the 109th Congress, Pt. 6:  SAFETEA, Title XI, Section IV(C), 2007 WL 2774042, at *5 (Comm. Print 2007) (discussing "contractual undertaking[s]" between oil companies, Credit Card Issuers and Ultimate Vendors"); *see also* Pl.'s Reply Ex. 1, at 2-3 (showing that prior legislative discussion of Credit Card Issuers and Ultimate Vendors also referred to these entities as separate and distinct entities).

Def.'s Reply at 14.  The regulations that clearly govern refund claims submitted by Ultimate Vendors for excise taxes on gasoline and diesel, Treas. Reg. §§ 48.6416(b)(2)-3(b)(1)(ii), 48.6427-9(c), (e), which were discussed earlier in this opinion, were not amended before 2009-2011 and still have not been amended to incorporate any SAFETEA provisions related to credit card sales to exempt customers.  Thus, in the court's view, an Ultimate Vendor that issued a fueling card to exempt customers was not clearly subject to the Credit Card Issuer provisions in the Code at the times relevant to this suit, and was not bound by any regulation in this regard because there were and are none.[9]

### 4.   Informational IRS Publications

In late 2005 the IRS issued Notice 2005-80.  I.R.S. Notice 2005-80, 2005-2 C.B. 953 (2005) (Excise Tax Changes Under SAFETEA and the Energy Act; Dye Injection).  This notice only partially explains the Credit Card Issuer statutory provisions that are relied upon by the government in this suit.  Nowhere does this publication state that an Ultimate Vendor must also register as a Credit Card Issuer if customer purchases are made by fueling cards.[10]  Nor does this publication contain a definition of the term "credit card."  The court concludes that IRS Notice 2005-80, even if it had the effect of a regulation, which it does not, did not deny Ultimate Vendors refund claim authority for fuel sales which occurred by fueling card.  Thus, at the time Powell submitted its refund claims, the court sees no violation of the provisions in the Code regarding Credit Card Issuers and excise tax refund claims.

More recently, the IRS has issued guidance to clarify its view that SAFETEA provisions in the Code regarding Credit Card Issuers could indeed be applied to Ultimate Vendors.  For example, the Internal Revenue Manual (IRM) was updated in 2014 to show that fuel purchases by cash or check could support

---

[9]/  The fuel excise tax refund claim statutes require the establishment, under "regulations prescribed by the Secretary," of such claims.  IRC § 6416(a)(1).  There is no such mandate for compliance with IRS publications and advice.

[10]/  The evidence in the record clearly establishes that Powell's cardlock locations were operated through use of a fueling card, not a general purpose credit card.  K. Powell Deposition at 22, 36.  For clarity the court uses the term fueling card here, even though credit is extended by Powell to its exempt customers who use these cards.

refund claims by Ultimate Vendors, but fuel purchases by credit card could *only* support refund claims submitted by the ultimate purchaser or a registered Credit Card Issuer. IRM 4.24.8.3.4, 4.24.8.3.9 (Aug. 5, 2014). Further clarification of the IRS position has been provided in an informational IRS publication titled "Fuel Tax Exemptions for Government Entities," available at http://www.irs.gov/Government-Entities/Federal,-State-&-Local-Governments/ Fuel-Tax-Exemptions-for-Government-Entities (last visited Jan. 27, 2016). This document defines credit card as "fuel card (credit card)," and advises that refund claims may be filed by Ultimate Vendors only "if the ultimate purchaser did not use a credit card." *Id.* In the court's view, these publications merely clarify the interpretation of SAFETEA espoused by the IRS in recent years, well after the tax quarters and the filing of refund claims at issue in this suit.

Most recently, the IRS issued a Memorandum on this topic, "Claims by Credit Card Issuers," which makes the IRS position on the SAFETEA enactments relatively clear. The date of this Memorandum is January 20, 2015, approximately four years after Powell had filed its last refund claim relevant to this suit. IRS Office of Chief Counsel, Claims by Credit Card Issuers, https://www.irs.gov/pub/irs-utl/PMTA-2015-04.pdf (last visited Jan. 27, 2016) (OCC Memorandum). Although the government concedes that the OCC Memorandum is not precedential, Def.'s Reply at 13, defendant cites the OCC Memorandum as support for its contention that Powell's refund claims in 2009-2011 were invalid because some of the fuel purchases occurred through the use of a fueling card.[11] In essence, the government argues that an Ultimate Vendor cannot obtain excise tax refunds for fueling card sales unless it is also a registered Credit Card Issuer. That appears, indeed, to be the opinion of the IRS in 2015.

A closer look at the OCC Memorandum persuades the court that it does not, however, support the government's counterclaim in this suit. Certainly, the conclusion of the Memorandum issued in 2015 is the same as the argument presented by the government in its motion:

> A credit card issuer must be registered as a credit card

---

[11]/  This court has accorded such memoranda relatively little weight other than to clarify the IRS's position on a legal issue at a certain point in time. *E.g.*, *Eaglehawk Carbon, Inc. v. United States*, 122 Fed. Cl. 209, 220 & n.10 (2015).

> issuer under Activity Letter "CC" to claim a credit,
> refund, or payment with respect to taxable fuel
> purchased with a credit card issued to an exempt user,
> even if the credit card issuer is already registered as an
> ultimate vendor.

OCC Memorandum at 1. But the court observes, at the outset, that the OCC Memorandum notes some uncertainty in the interpretation of the Credit Card Issuer provisions in the Code:

> A question has arisen as to whether . . . a credit card
> issuer that is registered under Activity Letter "UV"
> [Ultimate Vendor] must . . . also be registered under
> Activity Letter "CC" [Credit Card Issuer] in order to
> make a claim for credit, refund or payment with respect
> to the taxable fuel purchased with the credit card.

OCC Memorandum at 1-2. That this question has arisen and has been answered in 2015 does not necessarily support the government's contention that Powell's refund claims in 2009-2011 were invalid. Indeed, the issuance of the OCC Memorandum may indicate, as did the 2011 IRS audit of Powell's refund claims, that the IRS in 2011 had not yet taken a firm position as to Ultimate Vendors who might sell fuel to exempt customers by the mechanism of fueling cards.

Turning to the substance of the OCC Memorandum, the court would give more credence to the government's argument if this document persuasively relied upon statutes and regulations for its conclusion. But the OCC Memorandum does not find a definition of credit card or Credit Card Issuer among such binding authorities.[12] Instead, the OCC Memorandum looks to IRS Notice 2005-80, *see supra*, for authority regarding excise tax refunds when purchases have been made by credit card. OCC Memorandum at 3. The court cannot deny plaintiff's refund claim where the principal source of authority relied upon by the OCC Memorandum is an IRS Notice, which, as discussed *supra*, does not have the force

---

[12]/ The OCC Memorandum fails to precisely define the term "credit card." The court assumes that the author of the OCC Memorandum would consider that Powell's fueling card is indeed a credit card, but the document does not explore this topic with any specificity.

of law.

### 5.  Registration of Credit Card Issuers Not Addressed by Regulation

The court notes that while the OCC Memorandum provides helpful guidance by citing Treas. Reg. § 48.4101-1 (as amended in 2005), OCC Memorandum at 2, this regulation, in the court's view, is more supportive of plaintiff's position than defendant's.  Treas. Reg. § 48.4101-1 sets forth excise tax registration requirements which affect entities such as Ultimate Vendors.  As plaintiff notes, there is no mention of Credit Card Issuers in this regulation, which is another example of the failure of the Secretary to prescribe regulations that would implement the Credit Card Issuers provisions of SAFETEA.  Even the OCC Memorandum of 2015 cannot point to a regulation which specifically addresses the registration of Credit Card Issuers.

Furthermore, this regulation also states that application for registration as Ultimate Vendors must occur "in accordance with the instructions for IRS Form 637."  Treas. Reg. § 48.4101-1(e).  In 1994, Form 637 did not have a "CC" registration option for Credit Card Issuers, nor did the form point the reader to IRS Publication 510 for further information.  *See* IRS Form 637 (revised Jan. 1994).  Powell's application for registration as an Ultimate Vendor in 1994 was therefore in accordance with the Form 637 available at that time.  The current version of Form 637 does include the option for registry as a Credit Card Issuer and directs the applicant to Form 510 for more guidance.  *See* IRS Form 637 (revised Aug. 2012).  The government, however, has not pointed to any current or prior regulation that requires a registered Ultimate Vendor to register again as a Credit Card Issuer.  In the court's view, Powell did not run afoul of the "Credit Card Issuer" obligations in the Code or any regulations that applied to the excise tax refund claims Powell submitted in 2009-2011, other than the requirement that exemption certificates for sales to exempt diesel customers be renewed annually, as discussed *supra*.[13]  For this reason, the court rejects the government's "Credit Card Issuer" challenge to plaintiff's refund claims.

---

[13]/  The court does not opine as to the state of the law in 2016 now that the IRS has made its position less ambiguous as to Ultimate Vendors that sell fuel to exempt customers through the mechanism of fueling cards.

### C.     Penalties under IRC Section 6675

The final issue before the court is whether Powell had reasonable cause to submit its diesel excise tax refund claims when it customarily obtained three-year rather than one-year exemption certificates from its exempt customers.[14]  Although plaintiff bears the burden of proof on this issue, under these facts Powell has met this burden.  It is important to note, first, that the government does not allege that the dollar amounts of the refund claims submitted by Powell in 2009-2011 represent excessive excise tax refunds (when the price and amount of the fuel sold to exempt customers are considered) if the term "excessive" is given its ordinary meaning.  There is no allegation, in other words, that Powell inflated its refund claims or submitted anything but a request for reimbursement of fuel excise taxes it had paid but did not charge exempt customers.

It is also important to note that fuel sellers like Powell perform a valuable service for their customers and the IRS.  Small governmental units are relieved of the burden of paying excise taxes on the fuel they purchase from Powell, and are also relieved of the burden of attempting to obtain refunds or tax credits from the IRS should they have paid fuel excise taxes.  The IRS, too, benefits, because in lieu of processing ninety-four individual claims for refunds or credits related to excise taxes from ultimate purchasers, it could simply process Powell's consolidated claims on Form 8849.  In the court's view, the Treasury Department bears some responsibility in this scheme to ease, or at least clarify, the paperwork burden on fuel sellers such as Powell.

The court notes, as well, that the record supports a conclusion that the management of Powell kept accurate records of its fuel sales, the excise taxes Powell paid and did not recover, and the exempt or non-exempt status of its customers.  Exempt customers, unlike non-exempt customers, could not purchase fuel using standard, general purpose credit cards, but could only use Powell's fueling cards to operate a cardlock location pump.  Exempt customers, unlike non-exempt customers, could not use Powell's retail service station islands, but could only obtain fuel through truck delivery or cardlock locations.  Furthermore,

---

[14]/  It does not appear from the record that the exempt customers' representations on Powell's three-year certificates as to the end-use of the fuel and the tax-exempt status of these exempt customers would likely differ from one year to the next.

Powell, according to the deposition testimony in the record, attempted to comply with exemption certificate requirements which were confusing enough that the IRS auditor in 2011 could not identify the pertinent regulations in force at that time.[15]

Turning to the penalty statute relied upon by the government, IRC § 6675 states in relevant part that:

> **(a) Civil penalty.**
>
> In addition to any criminal penalty provided by law, if a claim is made under [IRC] section . . . 6427 (relating to fuels not used for taxable purposes) for an excessive amount, unless it is shown that the claim for such excessive amount is due to reasonable cause, the person making such claim shall be liable to a penalty in an amount equal to whichever of the following is the greater:
>
> > (1) Two times the excessive amount; or
> > (2) $10.
>
> **(b) Excessive amount defined.**
>
> For purposes of this section, the term "excessive amount" means in the case of any person the amount by which –
>
> > (1) the amount claimed under section . . . 6427, . . . for any period, exceeds
> > (2) the amount allowable under such section for such period.

26 U.S.C. § 6675(a)-(b) (2012).  Reasonable cause is not defined in IRC § 6675; the government persuasively argues that this court must examine analogous cases to determine the nature and scope of the "reasonable cause" exception in IRC § 6675.  Def.'s Reply at 16-17 (citing cases).

---

[15]/  Powell's management personnel responsible for exemption certificates and refund claims, at least on this record, consisted of employees who did not possess advanced degrees in accounting or tax law.  Def.'s App. at 228-30, 264-67, 317-18.

The range of decisions on the issue of "reasonable cause" to excuse tax penalties is quite broad, and court decisions appear to vary significantly based on the facts of the case. *See, e.g.*, *Stobie Creek Invs. LLC v. United States*, 608 F.3d 1366, 1381 (Fed. Cir. 2010) (*Stobie Creek II*) ("Whether a taxpayer had reasonable cause is a question of fact decided on a case-by-case basis.") (citations omitted). As defendant notes, ignorance of the law does not generally provide "reasonable cause" to excuse tax penalties. Def.'s Reply at 16-17 (citing cases). One test for reasonable cause, in the context of ignorance of the tax laws, is whether the taxpayer has exercised ordinary business care and prudence. *E.g.*, *Gonzales v. United States*, 115 Fed. Cl. 779, 790 (2014). Another factor to take into account is the taxpayer's experience, knowledge and education. *Stobie Creek II*, 608 F.3d at 1381.

The court turns to some specific decisions in this regard. Ignorance of the law may constitute reasonable cause where the state of the law is in flux and the taxpayer has made reasonable attempts to obtain expert advice about tax matters. *E.g.*, *Webster v. United States*, 375 F.2d 814, 821-22 (Ct. Cl. 1967). In *Webster*, for example, the plaintiff was excused from penalties because her ignorance of the law was the result of: (1) recent changes to the Code; (2) general ignorance of Code requirements by her peers; (3) infrequent enforcement of these Code requirements by the IRS; and (4) incorrect advice from the attorney who assisted her with real estate sales regarding the tax consequences of those sales. *Id.* Ignorance of the law may also constitute reasonable cause if the IRS has conducted prior audits of the taxpayer and has never before imposed penalties for the taxpayer's practices. *See, e.g.*, *Dana Corp. v. United States*, 764 F. Supp. 482, 488 (N.D. Ohio 1991) ("A reasonable person, exercising ordinary business care and prudence, could interpret the IRS' inaction as confirmation that his interpretation [of the tax laws] was correct."). Finally, ignorance of the law may constitute reasonable cause when the IRS itself exhibits some confusion as to the specific requirements of tax laws and regulations that the taxpayer has not observed. *See, e.g.*, *In re ACME Music Co.*, 196 B.R. 925, 936 (Bankr. W.D. Pa. 1996) (stating that "reasonable cause has been found to exist in the instance of . . . confusion by the IRS itself regarding both the law and its application" (citing *Sanderling, Inc. v. Comm'r*, 571 F.2d 174, 177-79 (3rd Cir. 1978))).

The government has cited no authority binding on this court for a more narrow definition of reasonable cause than that presented in the cases cited *supra*.

The United States Court of Appeals for the Federal Circuit has recently opined on the issue of reasonable cause when the question presented was the taxpayer's reliance on expert tax advice.  *See Estate of Liftin v. United States*, 754 F.3d 975, 979-82 (Fed. Cir. 2014) (stating that the expert tax advice relied upon must be objectively reasonable to establish that the taxpayer had reasonable cause to be excused from a tax penalty).  Reliance on faulty expert tax advice is not the question posed by this case.[16]  Instead, Powell appears to have adopted a three-year exemption certificate form that was valid until the end of 1993, about the time Powell was applying to become a registered Ultimate Vendor, and it failed to update this form to a more modern version that was valid for diesel sales in 2009-2010.  The court has found no case which is directly on point for this type of record-keeping failure where reasonable cause to excuse a tax penalty is asserted by a taxpayer.

The court finds the following facts to be pertinent to this inquiry.  The regulation setting forth a model three-year "exemption certificate" for the purposes of diesel sold to exempt customers is still in the current Code of Federal Regulations (CFR).  *See* Treas. Reg. § 48.4041-15 (as redesignated in 1986).  The CFR did not include the temporary regulation announcing that § 48.4041-15 had expired until the 1994 edition, at the time that Powell became an Ultimate Vendor.  *See* Treas. Reg. § 48.4041-0T (1994).  A taxpayer like Powell who consulted the final regulation, Treas. Reg. § 48.4041-0 (1996), in 2009-2011, or even today, would be directed from § 48.4041-15 to Treas. Reg. § 48.4082-4 (as amended in 2000), which contains neither a model exemption certificate nor a requirement that exemption certificates be limited to twelve months duration.  Thus, the CFR, in 2009-2011 and even today, does not direct the reader from the expired regulation, containing a three-year model exemption certificate, to the current regulation, Treas. Reg. § 48.6427-9(e)(2), which requires a one-year exemption certificate.  Although the court cannot agree with plaintiff that the CFR contains *conflicting* regulations in this regard, the CFR on this issue is certainly not a model of clarity.

The court notes, too, that Powell is a family-owned company and its managers, at least on this record, did not have advanced degrees in accounting or

---

[16]/  Powell appears to have been led astray not by faulty tax advice but by reliance on its own unchanging business practices and a dependence on trade association publications.  K. Powell Deposition at 83-84, 87-88; Def.'s App. at 328-29, 332-34.

tax law.  Am. Compl. Ex. 2, at 4; Def.'s App. at 228-30, 264-67, 317-18.  These managers may have been led astray by prior IRS audits which did not question the validity of Powell's three-year exemption certificates.  K. Powell Deposition at 48, 87-88.  Plaintiff also questions whether most tax professionals available to Powell would have given correct advice on the arcane topic of fuel excise tax laws and regulations.  Pl.'s Reply at 7.  The court finds that these facts also provide some measure of reasonable cause to excuse Powell's deficient record-keeping.

Finally, as discussed earlier in this opinion, the court notes that in 2011 the IRS auditor who reviewed Powell's records relied on § 48.4041-15, the expired regulation which allowed three-year exemption certificates, not § 48.6427-9(e)(2), the current regulation which requires one-year certificates, to determine whether Powell's exemption certificates were satisfactory.  Pl.'s Ex. 1, at 7, 10.  This fact provides evidence that the relevant regulations were confusing even to the IRS.  Given the nature of Powell's business and its reliance on prior IRS audits which had found no flaw in Powell's exemption certificates, the court finds it unreasonable to hold Powell to a higher understanding of IRS regulations than that possessed by the IRS auditor at the time in question.  The court finds that there is no genuine issue of material fact as to reasonable cause.  Powell has established reasonable cause for its failure to maintain one-year exemption certificates for its exempt diesel customers and therefore, this court finds that plaintiff shall be excused from the tax penalties available under the provisions of IRC § 6675.

## CONCLUSION

For all of the above reasons, the court grants plaintiff's motion for summary judgment in part, and denies plaintiff's motion for summary judgment in part, as stated in this opinion.  The court also grants defendant's motion for summary judgment in part, and denies defendant's motion for summary judgment in part, as stated in this opinion.  As requested by defendant, the court will permit the parties an additional thirty days to determine the amount of money, if any, owed to the United States by plaintiff on the government's counterclaim, to the extent that the government's counterclaim is founded on Powell's diesel excise tax refund claims for the relevant period, plus applicable interest.[17]  *See* Def.'s Mot. at 3 n.1.  Neither

---

[17]/ The record before the court is not perfectly clear as to whether the IRS continues,

(continued...)

party shall be awarded its costs or fees in this suit.

Accordingly, it is hereby **ORDERED** that

(1)    Plaintiff's Motion for Summary Judgment, filed April 8, 2015, is **GRANTED in part** and **DENIED in part**;

(2)    Defendant's Cross-Motion for Summary Judgment, filed June 10, 2015, is **GRANTED in part** and **DENIED in part**; and

(3)    On or before **March 7, 2016**, the parties shall **FILE** a **Joint Stipulation for Entry of Judgment** which sets forth the parties' determination of the amount, if any, owed by plaintiff to the United States as a result of the court's rulings in this opinion, and shall **ATTACH** a **Proposed Draft Order for the Entry of Judgment**.


/s/ Lynn J. Bush                          
LYNN J. BUSH
Senior Judge

---

[17](...continued)
pending the outcome of this litigation, to "withhold" refunds allegedly due Powell for more recent tax years.  Pl.'s Mot. at 2.  The court encourages the parties to confer and come to a consensus as to the amount of money, if any, Powell owes the government as a result of the court's ruling in this opinion.